UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. JOHN TELFORD,

               Plaintiff,

                                    Case No.  13-11670

vs.

                                    HON.  GEORGE CARAM STEEH

ROY ROBERTS, et al.,

               Defendants.

_____/

OPINION AND ORDER DENYING PLAINTIFF'S
<u>MOTION FOR TEMPORARY RESTRAINING ORDER [DOC. 2]</u>

This matter comes before the court on plaintiff Dr. John Telford's motion for temporary restraining order.  The motion was fully briefed and oral argument was held before the court on May 2, 2013.  For the reasons stated herein, plaintiff's motion for temporary restraining order is DENIED.

## **<u>FACTS</u>**

Plaintiff Dr. John Telford was terminated as the Interim Superintendent of Academics for the Detroit Public Schools ("DPS") by defendant Roy Roberts, currently serving as the Emergency Manager ("EM") for the DPS under Public Act 436.  Plaintiff alleges that the unilateral termination of his employment contract violated both the Contracts Clause, Art. 1, § 10 and the Due Process Clause of the United States Constitution.

In 2011, the Michigan Legislature enacted PA 4, which gave broad powers to an EM to "act for and in place and stead of" a local unit of government's elected chief

executive officer and its elected governing body.  Once the Governor had declared a financial emergency, the Governor could appoint an individual to be the local unit of government's EM.

PA 4 replaced the prior local government financial emergency law - PA 72 - which permitted the state to appoint emergency financial managers to assist a local unit of government with its financial difficulties.  The legislature expanded the scope of the powers given by PA 4 to cover not only financial practices and fiscal policies of a local government unit, but also permitted managers to fully act "for and in the place of" a local unit of government's elected governing body and its executive.  The grant of these broad powers included a general grant of legislative power to the EM, the power to unilaterally adopt local laws and resolutions.

A referendum to repeal PA 4 was placed on the ballot for November, 2012.  Michigan's Attorney General issued a formal opinion on August 6, 2012 that placing the referendum on the ballot acted to suspend PA 4 and revive PA 72, and if the voters repealed PA 4 at the election, then PA 72 would remain in effect permanently.  Pursuant to the Attorney General's opinion, the Governor reappointed all existing EMs that were serving under PA 4 as EFMs under PA 72.

On November 6, 2012, the voters rejected PA 4.  The Michigan Legislature, acting during its lame-duck session, passed a bill reenacting many of the emergency manager provisions of PA 4.  The Governor signed the *Local Financial Stability and Choice Act*, PA 436, into law on December 26, 2012.  PA 436 changed the title of the EFMs back to EMs and broadly expanded the scope of their powers to act "for and in the place of" the local unit of government's governing body, and its executive if it has

-2-

one.  The new act does not separate financial and academic governance as it relates to local school districts.  EMs are exempt from following the city charters, local ordinances and bylaws of the local school board.  In contrast to PA 4, PA 436 does provide procedures whereby the local governing body may petition for the removal of the EM.

PA 436 states that EMs appointed under PA4 and EFMs appointed under PA 72 shall be considered EMs under PA 436 as of March 28, 2013. Defendant EM was thus converted from an EFM appointed under PA 72 to an EM under PA 436.

On August 9, 2012, the elected Detroit Board of Education voted to appoint plaintiff as the Interim Superintendent of Academics for DPS, at a salary of $1.00 per year.  Defendant EM sued the Detroit Board of Education in Wayne County Circuit Court, seeking declaratory and injunctive relief that the contract with Mr. Telford was invalid.  On August 30, 2012, Judge Murphy entered an order declaring that during the period that PA 4 was suspended pending a vote in November, PA 72 was revived.  For this holding, Judge Murphy relied on the Attorney General's August 6, 2012 opinion. Judge Murphy further declared that the Detroit Board of Education had academic jurisdiction over the District and it, rather than the EFM, controlled areas of academics. Judge Murphy granted the Board of Education the authority to appoint an unpaid interim superintendent with responsibility in academics.

Plaintiff served as Interim Superintendent from August 13, 2012 through March 28, 2013.  The EFM recognized plaintiff in his capacity as Interim Superintendent, providing him with access to an office and a security swipe key to access the administrative offices.  Plaintiff fielded questions and complaints from parents, teachers and administrators in the District, and had a full-time secretary, computer and phone

-3-

line to accomplish his duties.

On March 26, 2013, the Board of Education voted to amend plaintiff's employment contract, permitting him to serve as Superintendent of Academics until December 31, 2014.  The new contract states that Telford shall serve at the "pleasure of the duly elected and serving Detroit Board of Education and cannot be terminated by any authority acting in its stead."  (Plaintiff's Ex. G, ¶ 1.5).  The contract further provides that Telford receive a salary "reasonable and commensurate with his credentials" to be determined by the EM or EFM.  (Ex. G, ¶ 1.6).  Telford commenced his duties under the amended contract at 9:00 a.m. on March 27, 2013.  When PA 436 took effect on March 28, 2013, the EM issued a written order terminating plaintiff effective at 12:01 a.m. that day.  (Ex. H).

## STANDARD FOR PRELIMINARY INJUNCTIONS

The decision of whether or not to issue a preliminary injunction lies within the discretion of the district court.  CSX Transp., Inc. v. Tennessee State Bd. of Equalization, 964 F.2d 548, 552 (6th Cir. 1992).  In determining whether to grant or deny an injunction, the district court is required to consider four factors:

1.   whether the movant is likely to prevail on the merits;

2.   whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction;

3.   whether a preliminary injunction would cause substantial harm to others; and

4.   whether a preliminary injunction would be in the public interest.

G & V Lounge v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1076 (6th Cir. 1994) (citing International Longshoreman's Ass'n v. Norfolk S. Corp., 927 F.2d 900, 903 (6th Cir. 1991), cert. denied, 502 U.S. 813 (1991).

**ARGUMENT**

I. Likelihood of Success on Merits

Plaintiff's federal constitutional due process claim depends on demonstrating a property right in continued employment.  To establish a due process claim, plaintiff must allege "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the [federal government] did not afford him adequate procedural rights prior to depriving him of the property interest."  *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009) (internal citations omitted).  "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  In *Loudermill*, the Supreme Court held "'the root requirement' of the Due Process Clause is 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest'."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citing *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis in original); see *Bell v. Burson*, 402 U.S. 535, 542 (1971)).

The Contract Clause of the U.S. Const. art. 1, § 10, cl. 1 provides, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."  Plaintiff argues that he had a legally binding contract that allowed him to continue to serve as the Superintendent of Academics of DPS until December 31, 2014, while the government argues that plaintiff's contract is void.  The first required element when making an as-applied Contract Clause challenge is the existence of a valid contract.  *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-13 (1983).

In order to succeed on each of his constitutional claims against defendants, plaintiff must establish that he had a property interest in his amended contract as Superintendent of Academics for DPS.  For purposes of this motion, plaintiff disavows any challenge to the validity of PA 436.  As a matter of statutory interpretation, plaintiff does argue that a PA 436-authorized EM of a school district is obligated to abide by the Revised School Code, particularly the 90-day notice requirement of MCL 380.1229(1). Also, for purposes of the pending motion, plaintiff disavows a challenge to the validity of PA 72 and its revival as determined by the Attorney General and state courts considering the issue.

Given those parameters, the court must determine whether the amended contract entered into between plaintiff and the Board is a valid contract, in which plaintiff has a protected property interest.  The amended contract was entered into while PA 72 was in place, at the tail end of the "interim" period from August 8, 2012, when the petitions placing the referendum of PA 4 on the November, 2012 ballot were certified, and March 28, 2013, the effective date of PA 436.  During this interim period, the DPS Board had authority over academics and EFM Roberts had authority over finances at DPS. Judge Murphy's circuit court decision was the legal authority by which plaintiff was permitted to retain his position of Interim Superintendent of Academics by which he was paid a salary of $1 a year and served at the pleasure of the Board which could terminate him at any time and without cause.

By entering into the amended contract during the interim period, the Board clearly exceeded all of the limits approved by Judge Murphy's ruling.  First, the amended contract deletes the word *interim* from plaintiff's title, thereby permitting him to

serve beyond the interim period covered by Judge Murphy's decision.  Second, the

amended contract provides for a salary commensurate with plaintiff's credentials and

that of his predecessors, and specifically not less than any of plaintiff's subordinates.

This term is flagrantly beyond Judge Murphy's approval of plaintiff's contract to work as

"an unpaid superintendent."  Third, the amended contract establishes a term of

employment until December 31, 2014.   While entered during the period covered by PA

72, the term of the amended contract is to take place under the governance of PA 436.

Fourth, while the amended contract provides that plaintiff serves at the pleasure of the

Board, it also dictates that he cannot be terminated by any entity acting in the place of

the Board.  This term is clearly directed at restricting the authority of the EM granted

under PA 436 to prevent plaintiff's termination.

PA 436 provides that upon appointment, the EM "shall act for and in the place

and stead of the governing body and the office of chief administrative officer of the local

government."  MCL 141.1549(2).  "Following appointment of an emergency manager . .

. the governing body and the chief administrative officer of the local government shall

not exercise any of the powers of those offices except as may be specifically authorized

in writing by the emergency manager . . . ."  Pursuant to PA 436, the appointment of

defendant Roberts as EM on March 28, 2013 resulted in Roberts automatically taking

the place of the Board and the Superintendent, with all of the powers attached to those

positions.

Therefore, PA 436, which took effect on the day after the amended contract,

renders the terms of the amended contract invalid.  The EM's authority under PA 436

forecloses implementation of the amended agreement, so it seems unlikely that the

court will conclude that the amended contract relied on by plaintiff to create a protected property interest is valid.  It therefore appears that plaintiff will ultimately fail to establish his constitutionally protected rights were violated by the defendants.  The likely invalidity of plaintiff's amended contract undermines both his Due Process and Contracts Clause claims.

Plaintiff makes a second argument that a property right to his employment is created by the Revised School Code.  At subsection (1), the Code addresses the superintendent's contract term and required notice:

> The term of the superintendent's contract shall be fixed by the board, not to exceed 5 years.  If written notice of nonrenewal of the contract of a superintendent is not given at least 90 days before the termination of the contract, the contract is renewed for an additional 1-year period.

MCL 380.1229(1).  Plaintiff argues that he was not given any notice of his termination, therefore his amended contract term, which was to expire December 31, 2014, rather than being terminated was actually extended for an additional year.

Plaintiff cites to the Michigan Supreme Court case *Sanders v. Delton Kellogg Schools*, 453 Mich. 483, 492 (1996) for the proposition that the 90-day notice requirement applies to terminations as well as nonrenewals.  However, the *Sanders court* analyzes the language of subsection (3), which applies to lower level administrators as opposed to superintendents.  Subsection (3) provides that nonrenewals must be for cause:

> A notification of nonrenewal of contract of a [lower level administrator] may be given only for a reason that is not arbitrary or capricious.

The holding in <u>Sanders</u> that nonrenewal encompasses terminations, as well as reassignments to nonadministrative positions, applies specifically to subsection (3), and

for good reason.  By statute, lower level administrators can only be nonrenewed, or
terminated, for a reason that is not arbitrary and capricious.  The reason for nonrenewal
or termination must be given, and the employee must be given an opportunity for a pre-
nonrenewal hearing.  Superintendents are not entitled to nonrenewal for cause, nor are
they given an opportunity for notice or hearing in the statute.  The 90-day notice
requirement logically only applies to nonrenewal of the superintendent, especially given
the language that such notice must be given "at least 90 days before the termination of
the contract," that is 90 days before the contract is to end.  The logical purpose of the
90-day notice requirement before a superintendent's contract is nonrenewed is to allow
the individual time to secure new employment, not to provide him with a property
interest in continued employment in a case where notice is not given.  The Code,
therefore, does not provide plaintiff with a property interest in continued employment.

Even if the court were to find that the EM is bound to abide by the Revised
School Code, subsection 380.1229(1) does not apply to the EM's termination of plaintiff,
because it only applies to nonrenewals, and not to the termination at issue.  Of course
the court would also be required to find that the amended contract was valid and
enforceable, which is not likely for the reasons expressed in the discussion above.  In
addition, for plaintiff's argument to succeed, the court would also be required to find that
PA 436 did not automatically cause the EM to succeed to the position of the Board and
the Superintendent, thereby invalidating any attempt of the Board to strip the EM of the
full authority of those offices.

-9-

For any of the reasons just discussed, the court finds that plaintiff is not likely to succeed on the merits of either of his constitutional claims.

II. <u>Irreparable Harm</u>

Plaintiff argues that his reputation was damaged by the manner in which the EM terminated him, and that such damage to his good name is not compensable by an award of money damages. However, plaintiff recognizes the powers given to the EM under PA 436, which includes automatically taking over the offices of the Board and the Superintendent. While the EM has the discretion to given any of the powers of those offices back to the Board or the Superintendent, such discretion is optional and not mandatory. Since plaintiff is not challenging the EM's power to replace him, he is left to argue that he was entitled to 90 days notice of his termination under the Revised School Code. The court has already determined that plaintiff is not likely to succeed on that argument. The court therefore concludes that plaintiff's claim of irreparable injury to his reputation does not mitigate in favor of granting injunctive relief.

III. <u>Balance of Harms</u>

Plaintiff contends that restoring his position as Superintendent of Academics pursuant to the amended contract is in the public interest to ensure that the area of academics is adequately served. Upon taking office pursuant to PA 436, defendant EM appointed Karen Ridgeway as Superintendent of Academics for DPS. While plaintiff may not believe Ridgeway is as qualified as himself, there is no striking reason for the court to conclude that the area of academics is not covered by Ridgeway's appointment by the EM. This factor does not weigh in favor of granting plaintiff's requested injunctive relief.

-10-

IV.  <u>Conclusion</u>

Plaintiff Dr. John Telford has not demonstrated that he is likely to prevail on the merits of his claims.  In addition, none of the other factors to be considered by the court mitigate in favor of granting an injunction, which would place plaintiff back in the office of Superintendent of Academics.  Therefore, plaintiff's motion for temporary restraining order is DENIED.

So ordered.

Dated:  May 23, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 23, 2013, by electronic and/or ordinary mail.

s/Barbara Radke
Deputy Clerk

---