UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DR. JOHN TELFORD,

                Plaintiff,

                                         Case No. 13-CV-11670

v.

                                         HON. GEORGE CARAM STEEH

ROY ROBERTS in his official capacity as the
emergency manager for Detroit Public Schools;
GOVERNOR RICK SNYDER in his official
capacity as the Governor of the State of
Michigan; and STATE TREASURER ANDY
DILLON in his official capacity as the State
Treasurer for the State of Michigan,

                Defendants.

_____/

## <u>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (DOC. #18)</u>

      This matter comes before the court on defendants' motion to dismiss.  The

motion was fully briefed and oral argument was held before the court on July 25, 2013.

For the reasons stated herein, defendants' motion to dismiss is GRANTED.

## <u>FACTS</u>

      Plaintiff Dr. John Telford was terminated as the Interim Superintendent of

Academics for the Detroit Public Schools ("DPS") by defendant Roy Roberts, then the

Emergency Manager for DPS under Public Act 436.[1]  Plaintiff alleges that the unilateral

termination of his employment contract violated both the Contracts Clause, Art. 1, § 10

and the Due Process Clause of the United States Constitution.

_____

      [1]See this court's order denying plaintiff's motion for temporary restraining order
for a more detailed description of the facts (Doc. #21).

In 2011, the Michigan Legislature enacted Public Act 4 ("P.A. 4"), which gave broad power to an Emergency Manager to "act for and in place and stead of" a local unit of government's elected chief executive officer and its elected governing body.  Once the Governor had declared a financial emergency, the Governor could appoint an individual to be the local unit of government's Emergency Manager.  P.A. 4 replaced the previous "Emergency Financial Manager Law," P.A. 72, which prescribed a narrower role for the financial Emergency Manager.  In contrast, P.A. 4 essentially empowered an Emergency Manager with the final say on all DPS policy decisions.

P.A. 4 was repealed by popular referendum on November, 2012.  In response, the Michigan legislature passed P.A. 436, which again expanded the Emergency Manager's powers beyond solely financial matters.  P.A. 436 was signed into law on December 26, 2012, and came into effect on March 28, 2013.  Until the effective date, local Emergency Managers served as Emergency *Financial* Managers under a revived P.A. 72.  Upon March 28, 2013, all Emergency Financial Managers were converted to the more powerful Emergency Managers under P.A. 436.

On August 9, 2012, the Detroit Board of Education ("the Board") appointed plaintiff as the Interim Superintendent of Academics for DPS, at a salary of $1.00 per year.  Defendant Roberts, then the Emergency Manager under P.A. 4, sued the Board in state court asserting that the contract was invalid, seeking declaratory and injunctive relief.  On August 30, 2012, Judge Murphy entered an order declaring that P.A. 4 was suspended pending the November referendum, until which time P.A. 72 was revived.  Thus, Judge Murphy ruled, until P.A. 72 was no longer in effect, the Board could appoint an unpaid interim superintendent because it still had authority over academic matters.

-2-

Plaintiff served as Interim Superintendent through March 28, 2013.  However, on March 26, 2013, the Board voted to amend plaintiff's contract to permit him to serve until December 31, 2014, at the "pleasure of the duly elected and serving Detroit Board of Education and cannot be terminated by any authority acting in its stead," and paying him a salary "commensurate with his credentials," determined by the Emergency Manager.  (Plt.'s Mot. TRO, Ex. G, ¶ 1.5, 1.6)  Defendant Roberts terminated this contract, however, effective upon Roberts's conversion to an Emergency Manager under P.A. 436 at 12:01 a.m. on March 28, 2013.

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint.  Viewing the facts in a light most favorable to the plaintiff and assuming plaintiff's factual allegations as true, the court determines whether the complaint states a valid claim for relief.  *See Bower v. Fed. Express Corp.*, 96 F.3d  200, 203 (6th Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## ANALYSIS

I.  Due Process Claim

        To establish a due process claim, a plaintiff must allege "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the [federal government] did not afford him adequate procedural rights prior to depriving him of the property interest."  *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009) (internal citations omitted).  "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ."  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

        A.  Validity of Plaintiff's Contract

        In order to survive a motion to dismiss regarding a due process claim, plaintiff must first establish that a property interest existed in the contract between himself and the Board of Education.  *See Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532 (1985).  Defendants argue that the amended contract was invalid because it fails to satisfy the elements of a contract and is contrary to public policy.  This would render plaintiff's claim to a property interest in the contract void.  If the amended contract was invalid, plaintiff fails to state a claim for relief regarding the Due Process Clause.

        Michigan law requires five elements in a valid contract: (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.  *Hess v. Cannon Twp.*, 265 Mich. App. 582, 592 (2005) (citations omitted).  Given these requirements, if a party does not have the authority to promise the terms of the contract, the contract is unenforceable.  *See Sittler*

-4-

*v. Bd. of Control of Mich. Coll. of Min. & Tech.*, 333 Mich. 681, 684 (1952) (finding provisions made by municipalities without the authority to make such promises unenforceable). Under the provisions of the revived P.A. 72, the Board did not have authority to promise plaintiff any financial compensation. Despite this fact, the Board promised plaintiff a salary "commensurate with plaintiff's 'credentials and that of his predecessors.'" The Board's lack of authority to make this promise renders the contract unenforceable.

Plaintiffs contract was also contrary to public policy. If a contract is against public policy, it is unenforceable. *Morris & Doherty, P.C. v. Lockwood*, 259 Mich. App. 38, 54 (2003) ("A proposed contract is concerned with a proper subject matter only if the contract performance requirements are not contrary to public policy."). Plaintiff's contract stated "[t]he [superintendent] shall serve at the pleasure of the duly elected and serving Detroit Board of Education and cannot be terminated by any authority acting in its stead." (Plt.'s Mtn. TRO Ex. G, ¶ 1.5) This provision effectively barred an Emergency Manager from terminating plaintiff's contract. The cornerstone of P.A. 436 is the Emergency Manager's power to terminate contracts in order to remedy financial distress. Plaintiff's contract was signed days before defendant Roberts was to take over as emergency manager pursuant to P.A. 436. It was an obvious and deliberate attempt to avoid the statutory termination power of the emergency manager, which is contrary to public policy.

The parties also knowingly violated Judge Murphy's order. In the order, Judge Murphy outlined the contours within which plaintiff's "contract" could exist: "*[d]uring the period that 2011 P.A. 4 is suspended and 1990 P.A. 72 is revived*, it is appropriate for

the Detroit Board of Education to appoint an *unpaid* superintendent with the

responsibility in academics." *Roberts v. Murray et al.*, Wayne County Circuit Court No.

12-010545-AW (emphasis added), Plt.'s Mot. TRO, Ex. E, 3.  In sharp contradiction,

plaintiff's amended contract extended past the time that P.A. 72 was revived, provided a

substantial salary, and was written to prevent the Emergency Manager from terminating

the contract upon the enactment of P.A. 436.  As stated in this court's order denying

plaintiff's motion for a temporary restraining order, the amended contract clearly

exceeded all of the limits approved by Judge Murphy's ruling in a case binding the

Board and never appealed by it.

  While this court does not rely on Judge Murphy's ruling here, it sees the blatant

disregard of his ruling as an indication that the contract was contrary to public policy.

Under these circumstances, plaintiff could not possibly obtain a legitimate property

interest in the contract at issue here, whether or not Judge Murphy's analysis is correct.

Therefore, plaintiff enjoyed no property interest in the amended contract between

himself and the Board.

  B. <u>Statutory Property Interest</u>

  Plaintiff also argues that the Revised School Code creates a property interest in

his position. The Code addresses the superintendent's contract term and required

notice for nonrenewal:

> The term of the superintendent's contract shall be fixed by the board, not
> to exceed 5 years.  If written notice of nonrenewal of the contract of a
> superintendent is not given at least 90 days before the termination of the
> contract, the contract is renewed for an additional 1-year period.

Mich. Comp. Laws § 380.1229(1).  Plaintiff argues that he was not given any

notice of his termination, therefore is entitled to at least 1-year relief as

prescribed above.  Defendants argue that given the statutory language above, the Board's termination power is unrestricted except for the situation in which the Board decides not to renew a contract.  Then, the Board must provide 90 day notice when it is not going to renew a superintendent's contract term.  This does not apply to plaintiff, defendants argue, because his contract was terminated, not nonrenewed.

Basic statutory interpretation leads this court to agree with defendants. The provision describes no restrictions on the Board's ability to terminate.  The logical purpose of the 90-day notice requirement before a superintendent's contract is nonrenewed is to allow the superintendent time to secure new employment before his contract runs out, not to provide him with a property interest in continued employment in the case in which notice is not given.  Thus, the Code provides no restriction on the Board's ability to terminate the superintendent.  Since, under P.A. 436, the Emergency Manager is effectively the Board, defendant Roberts had unrestricted termination power starting March 28, 2013.

Plaintiff points to *Sanders v. Delton Kellogg Schools*, 453 Mich. 483 (1996), for the proposition that the 90-day notice requirement applies to terminations as well as nonrenewals.  However, *Sanders* involved an assistant principal, thus implicating Mich. Comp. Laws § 380.1229(3): "[a] notification of nonrenewal of contract of a [lower level administrator] may be given only for a reason that is not arbitrary or capricious."  Responding to this court's statement in its previous order that *Sanders* was inapplicable, plaintiff advances the novel

argument that since the Emergency Manager is "umbued with *all* the districts

powers," the superintendent effectively becomes a subordinate, qualifying for

protection under 380.1229(3).  This is not so.  P.A. 436 does not change the title

of any positions, it only alters the final decision making power by allowing the

Emergency Manager to act "for and in the place of" the local unit of government.

When P.A. 436 came into effect, plaintiff's position title undoubtedly remained

"superintendent," which applies only to MCL 380.1229(1).  Thus, there is no

statutory basis for plaintiff's due process claim.

      C. Expected Property Interest

      Plaintiff argues that from his perspective, he was provided a valid contract by the

Board, and therefore reasonably expected a protected property interest.  *See, e.g.*,

*Perry v. Sindermann*, 408 U.S. 593 (1972).  Plaintiff claims that the Board "effectively

told [him] 'We have the authority'" to enter into plaintiff's contract.  It was therefore

reasonable, plaintiff asserts, for him to believe the Board's "implicit statement" that it

had the authority to contract with him in this manner, creating an expected property

interest in his contract.  This court is unconvinced.  It is clear that plaintiff was well

aware of the impending effective date of P.A. 436, even according to his own exhibits:

after plaintiff presented his report at a Special Board Meeting on March 26, 2013, the

Board unanimously voted to approve his amended contract, stating, "[w]hat we're doing

is what school districts all [over] the state [are] doing with their union contracts.  [We're]

moving right before P.A. 436 becomes [effective]."  Plt.'s Mot. TRO, Ex. F, 9.  Thus,

plaintiff surely knew that his position would become subject to termination just days later

when P.A. 436 came into effect.

Irrespective of plaintiff's claimed expectations, both plaintiff and the Board are charged with knowing the law in this context: "Michigan law charges those who make contracts with a municipality to know the limits of its power to contract." *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 540 (6th Cir. 2002). Plaintiff should have known that the Board lacked the authority to enter into any contract involving financial matters, and that its authority would be transferred to defendant Roberts on March 28, 2013. Therefore, plaintiff cannot claim a valid expected property interest.

## II.   Contract Clause Claim

"No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art.1, § 10, cl. 1. Plaintiff claims that defendant Roberts violated this provision when he terminated plaintiff's legally binding contract with the Detroit Board of Education. Logically, the first required element when making an as-applied Contract Clause challenge is the existence of a valid contract. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-13 (1983). For the reasons stated above, plaintiff's contract was void, which renders his Contract Clause claim without merit.

## III.   Abstention

Defendants argue that this court should abstain from ruling in this matter under the *Burford* doctrine. "The fundamental concern in *Burford* is to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." *Adrian Energy Assoc. v. Public Service Comm'n*, 480 F.3d 414, 423 (6th Cir. 2007). Two situations prompt *Burford* abstention: (1)

-9-

"difficult question[s] of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,"and (2) where "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.*

Defendants cite the severe financial situation of Michigan cities under P.A. 436 as the policy problem of substantial public import.  They argue that plaintiff's suit could disrupt the ability of Emergency Managers to modify existing agreements, essentially the "heart" of this state policy.  Additionally, defendants argue that P.A. 436 establishes a comprehensive policy to "deal with local fiscal emergencies addressing a broad public concern that local governments maintain fiscal integrity."  While the current financial distress exhibited by Michigan localities certainly is a redoubtable policy reality, the state's remedy cannot violate vested constitutional rights.  However, since plaintiff in this matter had no constitutionally protected interest, this court need not consider its *Burford* discretion.

IV.   Eleventh Amendment Immunity

Arguing that the real defendant party in this case is the state of Michigan, defendants also raise an Eleventh Amendment immunity claim.  Defendants assert that they are being sued in their official capacity because all issues relate to the official acts of Emergency Manager Roberts, and state officials are immune from suit in federal court that concern officials actions.  *See California v. Deep Sea Research*, 523 U.S. 491, 502 (1998).  An *Ex Parte Young* suit is an

-10-

available option for plaintiff, but would only allow a remedy of prospective injunctive relief.  *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).  Since this court finds that plaintiff's contract was invalid, however, there is no need to examine the merits of an *Ex Parte Young* claim because no prospective injunction is warranted.

Defendants similarly raise a qualified immunity defense, arguing that plaintiff has not provided sufficient facts that show defendants, acting in their official capacity in terminating plaintiff's contract, violated a clearly established statutory or constitutional right.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Again, since this court finds that plaintiff held no protected interest in his contract, it need not consider the qualified immunity issue.

## CONCLUSION

For the reasons stated above, plaintiff Dr. John Telford has failed to demonstrate that he had a valid contract with the Board of Education, let alone a property interest in his position as Superintendent.  Consequently, he has failed to state a valid claim for relief under the Due Process Clause or the Contracts Clause.  Defendants' motion to dismiss is therefore GRANTED.

**It is so ordered.**

Dated:  August 6, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of  record
on August 6, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk